Doris L. BOND, Petitioner,

v.

OTIS ELEVATOR COMPANY et al.,
Respondents.

No. A–9936.

Supreme Court of Texas.

March 24, 1965.

Bailey & Williams, Dallas, for Otis Elevator Co.

Bonney & Wade and Minor Morgan, Dallas, for Doris L. Bond.

Strasburger, Price, Kelton, Miller & Martin, Dallas, for Adolphus Tower Building.

HAMILTON, Justice.

## ON MOTION FOR REHEARING

We withdraw our former opinion in this cause and substitute therefor the following opinion:

Petitioner Bond brought this suit for damages against Adolphus Tower Building, herein sometimes called "the Building" and Otis Elevator Company, herein sometimes called Otis, alleging that while riding as a passenger in the Adolphus Tower Building intending to descend to the lobby floor, the automatic elevator descended very rapidly in what was described as a free fall, causing her to be thrown to the floor of the elevator and injuring her foot and ankle. Petitioner neither pleaded nor attempted to prove any specific act of negligence as against either defendant, but relied wholly on the doctrine of res ipsa loquitur. Respondents both denied liability and pleaded contributory negligence and unavoidable accident. The Building alternatively sought judgment over against Otis by way of indemnity, alleging that Otis by written contract with the Building had obligated itself to maintain the elevator in a safe and proper condition, and if there was any negligence involved it was solely that of Otis, which had manufactured and installed the elevator in question and thereafter exclusively maintained it.

The jury found that as petitioner entered the elevator it went into a free fall, throwing petitioner to the floor and injuring her; that at the time and on the occasion in question the elevator was under the exclusive control of the Adolphus Tower Building; that the Building did not fail to use a high degree of care in the maintenance of the elevator mechanism; that at the time and on the occasion in question the elevator was not under the exclusive control of Otis Elevator Company; that Otis failed to properly inspect and also failed to properly maintain the elevator; that such omission was negligence and a proximate cause of petitioner Bond's injuries; that the acts and omissions of Otis were the sole proximate cause of petitioner's injuries; that petitioner was not contributorily negligent; and that petitioner's damages were $31,254.00.

On motion of petitioner the trial court entered judgment jointly and severally against Adolphus Tower and Otis Elevator on the verdict for $31,254.00 and notwithstanding the findings that the Adolphus Tower was not negligent and Otis Elevator was not in exclusive control of the elevator in question. The judgment also provided that Adolphus Tower have judgment over against Otis for the full amount. Traders & General Insurance Company, intervenor, was awarded judgment for $3,330.46 against petitioner by way of subrogation for monies paid out by it to and for the account of petitioner under a work-

men's compensation policy. From this judgment the Adolphus Tower and Otis Elevator Company appealed to the Court of Civil Appeals. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause. 373 S.W. 2d 518.

All three parties have filed applications for writs of error in this court, the petitioner Bond requesting that the Court of Civil Appeals' judgment be reversed and the trial court's judgment affirmed; petitioners Otis Elevator Company and Adolphus Tower Building requesting that the Court of Civil Appeals' judgment be rendered rather than that the cause be remanded. Adolphus Tower alternatively requested it be given judgment over and against Otis. We reverse the judgment of the Court of Civil Appeals.

On the trial petitioner Bond established by her testimony and that of another passenger in the elevator that almost immediately after petitioner entered the elevator on the ninth floor of the Adolphus Tower it descended very rapidly in what they described as a free fall, and when it reached the fifth or sixth floor it stopped suddenly and began to bounce up and down violently; that petitioner pulled the emergency switch and the elevator came to a standstill between floors; that petitioner was thrown to the floor of the elevator, resulting in painful injury to her ankle.

The elevator in which petitioner was riding was one of five previously sold and installed by Otis in the Adolphus Tower Building, which is an office building in the City of Dallas. There was in evidence a contract between Adolphus Tower Building and Otis whereby Otis undertook the exclusive responsibility for the maintenance of the elevators and the mechanism operating them. That part of said contract applicable to this case is as follows:

"OTIS ELEVATOR COMPANY

"TO  Adolphus Tower        DATED AT Dallas, Texas.
      Main & Akard                October 20, 1955
      Dallas, Texas

"We propose to furnish OTIS MAINTENANCE on the following described elevators in your building located at Adolphus Tower, Dallas, Texas.

"Five (5) Otis Electric Passenger Elevators #228176–80

"Under this contract we will maintain the elevator equipment herein described, on the following terms and conditions:

"We will use trained men directly employed and supervised by us. They will be qualified to keep your equipment properly adjusted, and they will use all reasonable care to maintain the elevator equipment in proper and safe operating condition.

"We will regularly and systematically examine, adjust, lubricate as required, and if, in our judgment, conditions warrant, repair or replace:

"MACHINE, MOTOR, GENERATOR AND CONTROLLER PARTS,

including

"Worms, Gears, Thrusts, Bearings, Brake Magnet Coils or Brake Motors, Brake Shoes, Brushes, Windings, Commutators, Rotating Elements, Contacts, Coils, Resistance for Operating and Motor Circuits, Magnet Frames and other mechanical parts—using only *genuine* Otis Parts for this purpose.

"We also agree:

"To renew guide shoe gibs or guide rollers when in our judgment this is necessary to insure smooth and quiet operation and, except where roller guides are used, to keep the guide rails properly lubricated.

"To renew all wire ropes as often as in our judgment is necessary to maintain an adequate factor of safety; to equalize the tension on all hoisting ropes, and repair or replace conductor cables.

"To furnish *Otis Lubricants* compounded to our rigid specifications.

"To examine, lubricate, adjust, and if, in our judgment, conditions warrant, repair or replace all accessory equipment furnished and installed by us with exceptions as stated hereinafter.

"To examine periodically all safety devices and governors and make our customary annual safety tests.

"\* \* \*

"It is agreed that we do not assume possession or management of any part of the equipment but such remains yours exclusively as the owner (or lessee) thereof. \* \* \*"

———◆———

On the occasion in question J. L. Bostick, who was employed by the Adolphus Tower Building as elevator starter, heard a crashing sound when the elevator stopped between the fifth and sixth floors, at about which time the emergency signal similar to a burglar alarm came on. As per instructions when anything went wrong with the elevators, he immediately called Otis Elevator Company. A Mr. Anderson from Otis arrived within three or four minutes from the time he was called, and within fifty-eight minutes from the time of the fall of the elevator petitioner Bond was released from the elevator.

Neither Otis nor the Building offered any testimony by way of explanation of why the elevator fell, and the record does not otherwise reflect any explanation.

In entering the judgment which the trial court did it is apparent that it must have found: First, that under the fact situation here the doctrine of res ipsa loquitur applies. Second, that the evidence conclusively showed that the elevator was under the joint control of Adolphus Tower and Otis Elevator. Third, that the Adolphus Tower was negligent itself as a matter of law or that the Adolphus Tower was liable for the negligence of Otis Elevator.

■ We agree with the Court of Civil Appeals that the doctrine of res ipsa loquitur is applicable in this case. The elevator's going into a free fall and injuring the petitioner was such an accident which does not ordinarily occur without negligence, and is such an accident, that from the mere showing that it happened, negligence of those in control may be inferred.

It appears from the contract between Adolphus and Otis with reference to the maintenance of the elevators that the mechanism controlling the movement of the elevators is quite complicated and from the very nature of things the facts which would reveal how this "free fall" happened were peculiarly within the knowledge of respondents. If there is any explanation of this unusual occurrence of the elevator going into a "free fall", then the respondents are in a far better position to come forward with it than is the petitioner.

■ We think that the evidence conclusively shows that the elevator was under

the joint control of Adolphus Tower and Otis Elevator. A mere reading of that part of the contract quoted above shows this. Otis Elevator says that the contract places the exclusive control in Adolphus Tower. It points to the last sentence copied above from the contract wherein the agreement states that Otis did not assume possession or management of the equipment, but such remained in the owner, that is, Adolphus Tower. It is true that the Adolphus Tower retained possession and management of the elevators by that contract, but with the understanding that Otis was to examine, lubricate, adjust and if in *its judgment* conditions warrant, it was to repair or replace all necessary equipment. In other words, what maintenance was required depended upon the judgment of Otis, not that of Adolphus Tower. It would be difficult to imagine a relationship between two parties with reference to certain equipment where joint control is more conclusively shown. The petitioner pleaded joint control and under this evidence we think the trial court was correct in its necessary holding, in support of its judgment, that both parties were in joint control of the elevator in question.

■ We know of no case which holds that in order for the doctrine of res ipsa loquitur to apply that the instrumentality causing the injury must be under the exclusive control of a single entity. The Court of Civil Appeals in Cotton v. Henger, 312 S.W.2d 299, Civ.App., affirmed and modified by the Supreme Court, 159 Tex. 139, 316 S.W.2d 719, in dealing with the question quotes from a New Jersey case, Meny v. Carlson, 6 N.J. 82, 77 A.2d 245, 22 A.L.R.2d 1160. There the court said:

"* * * [t]he word 'exclusive' when used to define the nature of the control necessary to invoke the doctrine of res ipsa loquitur does not connote that such control must be several and the defendant singular and never plural. * * * The law does not

prohibit the application of the doctrine against two or more defendants where there is joint control."

In the case of Dement v. Olin-Mathieson Chemical Corporation, 282 F.2d 76 (C.A. 5th), the court held that in order for res ipsa loquitur to be applicable exclusive control need not be limited to a single entity. It says that the whole development of contemporary Texas law is contrary to any such limitation where there is joint control.

In 38 A.L.R.2d 905, at page 906, the annotation states:

"As a general rule, the doctrine of res ipsa loquitur has been applied to multiple defendants where they * * have been in joint control of the instrumentality or agency causing injury, * * * "

■ One of the grounds on which the Court of Civil Appeals reversed and remanded this case was that the trial court, having set aside the finding of the jury that the Adolphus Tower was not negligent left the court without a finding of negligence and the court, being without power to substitute his own finding in that respect for that of the jury, his judgment against Adolphus Tower could not stand. The Court of Civil Appeals is no doubt correct, especially if negligence is not established as a matter of law. However, we think that this question becomes immaterial in view of the holding of the Court of Civil Appeals, with which we agree. Said holding is as follows:

"* * * The Building's duty, which it owed to all who would reasonably be expected to use the elevators, to maintain the elevators in reasonably safe condition cannot be delegated to an independent contractor so as to relieve the Building of responsibility. Restatement of the Law of Torts, Sec. 425, p. 1145; 15–B Tex.Jur. 711–712, 'ELEVATORS', Sec. 10; 21 Tex.Jur. 2d 550, 'ELEVATORS AND ESCA-

LATORS', Sec. 9; Otis Elevator Co. v. Cameron, Tex.Civ.App., 205 S.W. 852, err. ref."

We conclude, then, that even without a finding of negligence against the Building that liability against the Building can be predicated upon the negligence of its independent contractor, Otis Elevator Company.

■ The liability of Otis rests upon jury findings to special issues 10, 11, 12 and 14. In answer to the issues the jury found: (10) that Otis failed to properly maintain the elevator; (11) that such failure was negligence; (12) that such negligence was a proximate cause of the plaintiff's injuries; and (14) that the negligence of Otis was a proximate cause of plaintiff's injuries. Otis' brief in the Court of Civil Appeals contains points of error attacking the findings on several grounds, including no pleading or proof of any specific act of negligence on the part of Otis and that each of the findings was against the overwhelming weight and preponderance of the evidence, and that the evidence was insufficient to support the findings. The Court of Civil Appeals expressly considered and ruled on all these points and sustained them. See 373 S.W.2d at page 524.

■ We think the Court of Civil Appeals was in error in holding that because there was no pleading or proof of any specific act of negligence on the part of Otis that the judgment of the trial court could not be sustained. The holding of that court would be correct if a case of res ipsa loquitur was not made out against Otis Elevator. However, in view of our holding that the evidence shows conclusively that Otis was in control of the elevator jointly with Adolphus Tower the reason for its holding falls. In other words, if the doctrine of res ipsa loquitur applies it is not necessary to plead and prove specific acts of negligence in order for the case to go to the jury on the question of negligence generally. As we view this case we conclude that the finding of failure to properly maintain the elevator in question is not specific, but is general.

In the case of Honea v. Coca-Cola Bottling Company, 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445, the court said:

"*Res ipsa loquitur* is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer. Washington v. [Missouri] K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764; Texas & P. Coal Co. v. Kowsikowski, 103 Tex. 173, 125 S.W. 3; Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659."

We think this case comes clearly within the rule of law stated in the above case and the cases it cites. The character of this accident is one that does not ordinarily happen in the absence of negligence. The instrumentality causing the injury is conclusively shown to be under the joint control of Adolphus Tower and Otis Elevator.

■ The opinion of the Court of Civil Appeals rather clearly indicates that its action on the points was predicated on a belief that the issues were intended to, and did, submit *specific* acts of negligence, rather than general negligence under the res ipsa loquitur doctrine. It should be said that there was some rational basis for the belief in the pleadings and the court's charge. But however that may be, we have now held that the listed issues and the jury's answers furnished a basis for recovery under res ipsa, and, accordingly, that the points asserting lack of pleadings and no evidence should have been over-

ruled. This holding does not dispose of the weight and preponderance and insufficient evidence points, and we have no jurisdiction to rule on those points. Art. V, Sec. 6, Constitution of Texas, Vernon's Ann.St.; Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S.W. 1030, 1034.

 When a Court of Civil Appeals has before it points of error asserting "no evidence" and "insufficient evidence" to support vital jury findings, and it sustains both, it is the well settled and long established practice of this court, if it disagrees with the "no evidence" ruling, to remand the case to the trial court for retrial. See Barker v. Coastal Builders, 153 Tex. 540, 271 S.W.2d 798, and cases there cited. There is an exception to the rule. When it appears that a Court of Civil Appeals has sustained an "insufficient evidence" point of error upon an erroneous theory, it is the practice of this court, when disagreeing with the "no evidence" ruling, to remand the case to the Court of Civil Appeals for reconsideration of the "insufficient evidence" ruling. Vasquez v. Meaders, 156 Tex. 28, 291 S.W.2d 926; Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933, 264 S.W.2d 689. This case is clearly within the exception.

In view of the fact that the jury did not find Adolphus Tower negligent in any respect and its liability to the plaintiff is predicated altogether on the negligence of Otis Elevator, the trial court's judgment was correct in giving Adolphus Tower judgment for the full amount over against Otis Elevator Company by way of indemnity. Kampmann v. Rothwell, 101 Tex. 535, 109 S.W. 1089, 17 L.R.A.,N.S., 758; Scott v. Curtis, 195 N.Y. 424, 88 N.E. 794, 40 L.R.A.,N.S., 1147; Waylander-Peterson Co. v. Great Northern Ry. Co., 201 F.2d 408, 37 A.L.R.2d 1399 (8th Circuit); Harper & James, The Law of Torts, Sec. 10.2, p. 723; Prosser on Torts, 3rd Ed., Sec. 48, p. 279; Restatement of the Law of Restitution, Sec. 96, p. 418.

Petitioners Otis Elevator Company and Adolphus Tower Building had points in the Court of Civil Appeals raising the question of excessive damages and requesting a remittitur. We have no jurisdiction over this matter. Horton v. Benson et al., 277 S.W. 1050, (Tex.Comm.App. 1925).

We therefore reverse the judgment of the Court of Civil Appeals and remand the cause to that Court with instructions to pass on points of error asserting that the jury's findings are against the overwhelming weight and preponderance of the evidence and are not supported by sufficient evidence, and, if they are overruled, to pass upon the question of excessiveness of the damages, and if judgment can then be entered for damages, to affirm the judgment of the trial court except as it may be modified as a result of the excessive damages question. Otherwise the cause should be remanded for a new trial.

Pope, J., not sitting.