**Theodore Olin MOELLER, Appellant,**

v.

**FORT WORTH CAPITAL CORPORA-
TION, Appellee.**

**No. 18297.**

Court of Civil Appeals of Texas,
Fort Worth.

Dec. 31, 1980.

Rehearing Denied Jan. 29, 1981.

---

Thorne, Thorne & Robertson, Inc. and Michael A. Robertson, Grand Prairie, for appellant.

McBryde, Bogle & Green and John H. McBryde, Fort Worth, for appellee.

## OPINION ON MOTION FOR REHEARING

SPURLOCK, Justice.

Motion for rehearing is granted. Since oral submission and handing down of our opinion dated October 16, 1980, the parties have filed a stipulation dated October 22, 1980, stating that their stipulation of September 29, 1980, regarding this court's consideration of the deposition of Ernest John Jezek, was in error. The parties have now stipulated that they were in error and withdraw their stipulation as to the deposition of Jezek and state the same cannot be considered by this court. Therefore, we withdraw our original opinion and substitute therefor the following:

Appellant, Theodore Olin Moeller, was employed by Dover Elevator Company when he was struck by a falling elevator. Moeller, now permanently injured, sued multiple defendants, including his employer, the prior and present building owners, manufacturers of various elevator parts, and others involved in the design and construction of the building and the installation of the elevator. After severance from the remaining defendants, summary judgment was granted to Fort Worth Capital Corporation (FW Capital), appellee in this case, a prior owner of the building. Moeller appeals the granting of FW Capital's motion for severance and for summary judgment.

We reverse the trial court's judgment and remand this defendant's case for trial on the merits.

Moeller was employed by Dover Elevator Company (Dover) as a mechanic's helper. His duties were to assist another Dover employee, Hayden Sralla, in inspection, repair, maintenance and testing of elevators. Their duties depended on provisions of the contracts between the specific building owners and Dover. In May of 1975 Moeller and Sralla were performing a safety test on a hydraulic elevator in a building located at

1200 West Freeway, Fort Worth, Texas, which is now owned by Fort Worth Title Company. At the conclusion of that test, Moeller entered the bottom of the elevator shaft to turn a "pit shut-off valve" so that the elevator could be returned to normal operation. The valve controlled the oil flow to the hydraulic jacking mechanism which supported the elevator in the shaft. It was located underneath a pipe near the bottom of the elevator shaft.

Because it was underneath the oil supply pipe and close to the floor, the only way it would be clearly visible would be with the use of a mirror. The valve was composed of four pieces: a brass plug, body, washer, and nut. In addition, the threads on the nut and on the plug were evenly drilled to make room for a fifth part, a steel lock-pin. This pin was inserted between the plug and nut so that instead of permitting the valve to be loosened, pressure on the nut (a common practice to make the valve plug easier to turn) would result in the valve becoming completely loose and permit the uncontrolled flow of oil from the elevator jack into the pit. The oil supply pipe was so close to the floor that the valve either had to be installed with the hole for the pin already in it or it had to be removed from the pipe (an unusual occurrence) so that the hole could be drilled in it. Summary judgment evidence indicates that the valve failure was due to this pin having been deliberately inserted into the valve, causing both the possibility and the arguable probability that the valve would become unassembled when operated and cause the elevator to fall.

Because this valve did come apart when Moeller attempted to turn it, the elevator fell and Moeller was hit. The resulting injuries have left him permanently paralyzed from the neck down.

The elevator was installed by Hunter-Hayes Elevator Company when the building was originally built by Fort Worth Freeways Investment Corporation. Both the building and the elevator installation company have been subsequently sold. Hunter-Hayes was bought by Dover and underwent some corporate reorganizations after the sale. Title to the building has been held by Fort Worth Freeways Investment Corporation, Fort Worth Title Company, Fort Worth Capital Corporation, US Life Title Insurance and (currently) a second Fort Worth Title Company. The elevator in this case has been covered by some form of inspection or service contract with Hunter-Hayes or Dover throughout all the changes.

FW Capital's grounds for its motion for summary judgment can be grouped into four general areas: 1) as a prior owner, FW Capital had no legal duty to Moeller; 2) Even if a prior owner could have a duty, the elevator was always handled by independent contractors; Moeller and his employer had specifically been hired to discover and correct any defect in the elevator and thus Moeller had assumed the risks inherent in elevator servicing; furthermore, knowledge of the conditions in this particular elevator could be imputed to him because his employer and his employer's predecessors, independent contractors, had been the only persons authorized to work on this elevator; 3) Moeller was contributorily negligent, and this negligence was of such magnitude that it constitutes the sole proximate cause of his injuries; and 4) FW Capital alleges that Moeller's presence on the premises on the day of his accident had been obtained by a misrepresentation of his employer, which amounted to fraudulent conduct.

FW Capital complains on appeal that some deposition evidence cannot be considered because it was taken prior to the time that FW Capital was made a defendant. No objection was made prior to appeal. Such depositions could not have been used if FW Capital had objected at the time of the summary judgment hearing. Tex.R. Civ.P. 166–A(c), permits the use of "pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, . . . ."

■ The Supreme Court in *City of Houston v. Clear Creek Basin Authority*, 589

S.W.2d 671 (Tex.1979), discussed the history of summary judgment, the 1978 revision of the rules, and the requirements now placed on both movant and non-movant to insure presentation to the trial court of all controverted issues. The basic requirement that a movant for summary judgment "must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law" remains unchanged. 589 S.W.2d at 678. At the summary judgment hearing, the question before the court is whether FW Capital met its burden of proving that Moeller cannot prevail against it. If a material fact issue is raised, summary judgment is not appropriate. When the movant raises an affirmative defense by which it could legally prevail, in general the law and the 1978 revision of the rules expect that the non-movant will come forward with evidence showing that a genuine dispute as to a factual issue does exist. See 4 McDonald, Texas Civil Practice secs. 17.26.2, 17.26.12 (1971) and cases cited therein.

Revised Tex.R.Civ.P. 166–A states: "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." The discussion on this part of the rule in *City of Houston v. Clear Creek Basin Authority, supra*, appears to interpret this language very restrictively. There the Supreme Court stated:

"[B]oth the reasons for the summary judgment and the objections to it must be in writing and before the trial judge at the hearing. . . .

"If the issues are to be further restricted or expanded . . . beyond those 'expressly presented' by the written motion, the answer to the motion, or any other written response, the change must meet the requirements of rule 11 . . . ." 589 S.W.2d at 677.

In this case, Moeller's response to the motion for summary judgment referred to some deposition testimony presumably then on file with the court. The deposition of Ernest John Jezek was taken prior to FW Capital's being named a defendant and the parties after submission on appeal have stipulated that Jezek's deposition was not filed. No reference was made in the response to the motion for summary judgment to other deposition evidence then properly filed on which Moeller now relies on appeal to show that a fact issue does exist. Moeller's response focused on the (a) legal arguments raised by the motion, (b) alleged deficiencies in the supporting affidavits, and (c) discrepancies in Jezek's affidavit and deposition testimony. There was no objection to the use of any deposition even though in Moeller's response to the motion for summary judgment he had referred to one. We hold the sworn depositions then filed were properly before the trial court. Hearsay evidence, of course, is no evidence. Therefore, it is not necessary to object to it on this ground. Evidence in depositions other than Jezek's is adequate to defeat the motion for summary judgment. Any objection to the use of these depositions as summary judgment proof was waived. Tex.R.Civ.P. 166–A(c).

FW Capital also raises as a counterpoint that Moeller failed to file a general statement in opposition to and failed to respond specifically to all grounds raised in the motion for summary judgment, and that because the order granting that motion did not specify on which grounds it was granted, the judgment should be affirmed without further consideration. These allegations simply do not conform to the record. Moeller filed a response to FW Capital's first amended motion for summary judgment, replying paragraph by paragraph to FW Capital's arguments. In Moeller's appeal he raises five general points of error. These points and the accompanying arguments respond to all of the grounds raised by FW Capital. This meets the requirements for consideration by this court. *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (Tex.1943).

Having determined what evidence was properly before the trial court and how some procedural obligations of both movant

and non-movant were met, we now consider Moeller's points of error.

Moeller asserts the trial court erred in rendering summary judgment because a prior owner of a building could be held liable under the law stated in Restatement (Second) of Torts, sec. 353 (1965). This section, which was held to be the law in Texas in *Beall v. Lo-Vaca Gathering Co.*, 532 S.W.2d 362 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.), states an exception to the general rule that a prior owner of real property is not liable for injuries occurring after the sale of property. The first paragraph reads:

" '(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee *and others* upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if,

" '(a) the vendee does not know or have reason to know of the condition or the risk involved, and

" '(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.' " (Emphasis supplied.) 532 S.W.2d at 365.

FW Capital argued that as a prior owner it could not be legally liable after the sale of the building.

In *Bond v. Otis Elevator Company*, 388 S.W.2d 681 (Tex.1965), the Supreme Court held the building owner's duty to maintain the elevators could not be delegated to an independent contractor so as to relieve the owner of responsibility. Since, under *Bond*, elevator maintenance responsibility is nondelegable and under sec. 353 of the Restatement, a prior owner can be liable, FW Capital's argument that it is automatically free of liability is incorrect. Thus whether the malfunctioning valve was negligently modified or negligently maintained during FW Capital's ownership is crucial.

The deposition evidence of Thomas J. Cupp, Donald Jerome Jolly, and Rayford Jones raises a fact issue as to whether modification occurred during FW Capital's ownership. Interpreting the evidence in the light most favorable to the non-movant, a fact issue as to this question is raised. Moeller's first point of error is therefore sustained.

FW Capital raised affirmative defenses in three basic areas. Moeller responded to these in his second point of error. The first two of these defenses, the doctrines of "no duty" and "assumption of risk," are no longer viable in Texas. *Farley v. M M Cattle Company*, 529 S.W.2d 751 (Tex.1975) and *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978). The third affirmative defense, that of having delegated responsibility for elevator maintenance to an independent contractor, is precluded by *Bond v. Otis Elevator Company*, 388 S.W.2d 681 (Tex.1965) (discussed above) and the Restatement (Second) of Torts sec. 425 (1965), which reads:

"One who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business, or a chattel which he supplies for others to use for his business purposes or which he leases for immediate use, is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land or chattel in reasonably safe condition, as though he had retained its maintenance in his own hands."

Even if *Bond*, which arose out of injury to an elevator passenger rather than a workman, is inapplicable to this case, the legal principles announced in sec. 425 would apply. The court further stated in *Bond, supra*:

"We conclude, then, that even without a finding of negligence against the Building that liability against the Building can be predicated upon the negligence of its independent contractor, Otis Elevator Company." 388 S.W.2d at 686.

Moeller's second point of error is sustained.

Moeller asserts the trial court erred in rendering summary judgment be-

cause the evidence raised fact issues as to whether plaintiff was guilty of negligence causing his injuries and the degree of such negligence, if any. FW Capital in its motion for summary judgment argued that Moeller was contributorily negligent as a matter of law for failing to exercise a reasonable amount of caution for his own safety and that this negligence was of such magnitude as to be the sole proximate cause of his accident and injury. McDonald describes a situation such as this when he stated:

"Ordinarily summary judgment will not be awarded where the issue is inherently one for a jury or judge trial, as generally in instances of intent; exercise of judgment, of discretion, of reasonable care; res ipsa situations; uncertainty; reasonable amount; unliquidated damages; or the like."

4 McDonald, Texas Civil Practice sec. 17.26.-12 (1971), quoting Stayton, *Notes on Summary Judgment*, 13 Tex.B.J. 445 at 473 (1950). As a general rule summary judgment is not appropriate for cases involving contributory negligence. *Allen v. F. W. Woolworth Co.*, 315 S.W.2d 612 (Tex.Civ. App.—El Paso 1958, writ ref'd n. r. e.). Moeller's third point of error is sustained.

We do not need to consider Moeller's forth and fifth points of error to determine this appeal.

Moeller asserts the trial court erred in granting summary judgment because the evidence raised fact issues as to whether or not plaintiff was a trespasser, licensee, or invitee. (This is also discussed in FW Capital's arguments concerning its second and third counterpoints.) The classification is significant in determining whether the exception to the general rule absolving a prior owner of responsibility applies. This section from the Restatement of Torts was quoted above in the discussion of Moeller's first point of error. Arguments address FW Capital's claims that Dover misrepresented state law concerning elevator testing and that this misrepresentation was the reason Fort Worth Title (the current owner) consented for Dover workmen to run the safety test being performed when the accident occurred. Each of these lay individuals was charged with knowledge of the law of the state. Each knew none of the others was an attorney. What Dover may or may not have believed to be state law, or what their representatives may or may not have stated to Fort Worth Title to be the law, is irrelevant. Regardless of misplaced reliance, if any, Fort Worth Title had consented to Dover's running the test.

Moeller asserts the trial court erred in granting summary judgment because FW Capital's liability as a prior owner has not been conclusively refuted, and for that reason it is not entitled to summary judgment. Whether FW Capital is a direct successor in interest to the corporation which built the building involved may be reached at trial on the merits, but the possibility of FW Capital's liability as a prior owner is sufficient to reverse the summary judgment.

Each of FW Capital's counterpoints has been considered, as well as each point of error raised by Moeller. For the reasons stated above, the judgment of the trial court granting severance and summary judgment is reversed, this case is remanded for trial.